# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>ALFREDO MENDOZA-ALVAREZ,<br>　　　　　　　　　　　Defendant. | CASE NO. 13CR1653 WQH<br><br>ORDER |

HAYES, Judge:

The matters before the Court are 1) the motion to dismiss the indictment and to hold an evidentiary hearing (ECF No. 26); and 2) the motion to produce discovery (ECF No. 16-4) filed by Defendant Alfredo Mendoza-Alvarez.

## FACTS

In January 1999, Defendant received a Notice To Appear before an Immigration Judge. On January 27, 1999, Defendant appeared before an Immigration Judge and was ordered removed to Mexico. On February 3, 1999, Defendant was physically removed to Mexico. (ECF No. 31-6 at 7).[1]

Following his February 3, 1999 removal, Defendant was removed on December 23, 1999; and June 30, 2000. (ECF No. 31-6).

On September 13, 2002, Defendant was convicted in the United States District Court for the Eastern District of Washington of "Alien in the US after Deportation" in

---

[1] The Government will not rely upon this removal at trial.

violation of 8 U.S.C. § 1326. (ECF No. 31-7 at 1). Defendant was sentenced to time served and removed to Mexico.

On February 9, 2011, Defendant was convicted in the United States District Court for the Eastern District of Washington of "Alien in the US after Deportation" in violation of 8 U.S.C. § 1326. (ECF No. 31-7 at 6). Defendant was sentenced to serve 8 months imprisonment followed by 3 years of supervised release. Defendant was removed to Mexico.

On September 20, 2011, Defendant was arrested in the Southern District of California. Defendant was informed of his rights, including his right to counsel in an immigration proceeding using a Form I-826. (ECF No. 31-3 at 5). In a statement taken on September 20, 2011 in the Spanish language by an immigration officer, Defendant admitted that he is a Mexican citizen and that he illegally entered the United States. (ECF No. 31-3 at 6-7). Defendant entered a plea of guilty pursuant to a Plea Agreement to a Superseding Information charging him with misdemeanor illegal entry in violation of 8 U.S.C. § 1325. (ECF No. 31-7 at 13-15). On February 7, 2012, Defendant was sentenced to serve 6 months imprisonment. (ECF No. 31-7 at 17).

On May 22, 2012, the United States District Court for the Eastern District of Washington revoked the Defendant's supervised release imposed in February 2011 for the violation of 8 U.S.C. 1326 and sentenced Defendant to serve 9 months imprisonment with 4.5 months consecutive to the misdemeanor illegal entry and 4.5 months concurrent to the misdemeanor illegal entry in the Southern District of California. (ECF No. 31-7 at 12).

While serving the sentence for misdemeanor illegal entry from the Southern District of California and supervised release violation from the Eastern District of Washington at a federal correctional facility in Texas, Defendant was placed in

expedited removal proceedings under 8 U.S.C. § 1225.[2]  On November 26, 2012, Agent Pereida, an Immigration Enforcement Agent with the United States Department of Homeland Security, interviewed Defendant and reviewed the personal information provided by Defendant and other information from record checks. Agent Pareida noted in his report that Defendant had entered the United States illegally on September 20, 2011 near Tecate, California without inspection by an immigration officer and that Defendant claimed fear of returning to Mexico. (ECF No. 31-4 at 2). On November 29, 2012, Agent Pereida prepared an I-860 documenting the charges forming the basis of the expedited removal proceedings. (ECF No. 31-4 at 5-6).

On November 30, 2012, Agent Lazcano conducted a sworn statement with Defendant. Defendant admitted the facts forming the basis of the charges underlying his deportation and stated "Yes" to the question "Do you have any fear of persecution or torture if you are returned to your country?" (ECF No. 31-4 at 8). Agent Lazcano typed Defendant's answers directly onto the Form I-867A. At the conclusion of the interview, Agent Lazcano printed the sworn statement to review with Defendant. Defendant refused to review and sign the Form I-867A. Agent Lazcano printed "Refused to Sign" on the signature block and returned the Form I-867A to Agent Pereida.[3]

Agent Pereida forwarded all of the documents to his supervisor to determine whether an Order of Removal would issue. Agent Pereida subsequently received a signed Form I-860 Order of Removal. (ECF No. 31-4 at 5).

On December 13, 2012, Agent Pereida personally served the Form I-860 on Defendant, informed him of the charges against him, and informed him that an Order

---

[2] The Government submits declarations of agents describing the procedures the taken with respect to the expedited removal proceedings. (ECF Nos. 31-1 and 31.2). Defendant submits a declaration regarding the circumstances of expedited removal. (ECF No. 22 at 3).

[3] In his declaration, Defendant states that he remembers refusing to sign this document and states that one of the reasons he refused to sign the document is that it was not read to him. (ECF No. 22 at 3).

of Removal had been issued. Agent Pereida states: "At no point did Mendoza-Alvarez indicate to me that any of the charges I read to him were incorrect or inaccurate. " (ECF No. 31-1). Agent Pereida served Defendant with the Form I-860 containing the signed Order of Removal. Immigration officials subsequently conducted a credible fear interview and hearing. The Order of Removal was affirmed. (ECF No. 31-4 at 14).

On March 26, 2013, Defendant was removed from the United States at Del Rio, Texas. (ECF No. 31-4 at 15).

On April 22, 2013, Defendant was apprehended on the north side of the international border fence approximately 23 miles east of Tecate, California.

In addition to his three federal criminal immigration convictions, Defendant has the following state court misdemeanor convictions: Possession of Controlled Substance, April 17, 1999, Solano County, California Superior Court; Domestic Violence Assault, March 17, 1998, Yakima, Washington Municipal Court; Driving with Suspended License, November 12, 1999, Yakima, Washington Municipal Court; and Theft Shoplifting November 14, 2010, Yakima, Washington Municipal Court.

On May 7, 2013, the grand jury returned a two count indictment in this case charging the Defendant with improper entry by alien in violation of 8 U.S.C. §1325 and removed alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b).

## APPLICABLE LAW

Defendant contends that the indictment should be dismissed on the grounds that his 2012 expedited order of removal was the result of a proceeding that violated his due process rights and resulted in prejudice to him. The Court must conduct "*some meaningful review*" in this case where this administrative action plays "a critical role in the subsequent imposition of a criminal sanction." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837, 107 S.Ct. 2148 (1987). Under 8 U.S.C. §1326(d), an alien criminal defendant may not challenge the validity of a removal order "unless the alien demonstrates that – (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which

1 the order was issued improperly deprived him of the opportunity for judicial review;
2 and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The entry
3 of a removal order is fundamentally unfair for the purposes of § 1326(d)(3) only if the
4 removal proceeding violated the alien's due process rights and the alien suffered
5 prejudice as a result of the defects. *United States v. Arias-Ordonez*, 597 F.3d 972, 976
6 (9th Cir. 2010).

## DUE PROCESS VIOLATION

Defendant contends that his due process right to counsel under the Fifth Amendment was violated when he was not informed of his right to consult with a lawyer during the expedited removal proceeding. The Government contends that the expedited removal statute and the regulations do not provide a right to counsel or require DHS officials to advise an alien of the right to consult with counsel. The Government further asserts that Defendant was provided with a Form I-826[4] subsequent to his September 2011 apprehension which advised him that he could retain counsel and that no official prevented Defendant from retaining counsel at any time during his expedited removal proceeding.

In *United States v. Barajos-Alvarado*, 655 F.3d 1077 (9th Cir. 2011), the Court of Appeals concluded:

> Barajas–Alvarado's claim that he was denied his right to counsel, is meritless on its face. Barajas–Alvarado himself identifies no legal basis for his claim that non-admitted aliens who have not entered the United States have a right to representation, and we are aware of no applicable statute or regulation indicating that such aliens have any such right. The cases cited by Barajas–Alvarado involve aliens in the more formal removal proceedings, where the regulations provide a right of counsel, as compared to expedited removal proceedings, where they do not. *Cf.* 8 C.F.R. § 287.3 (stating that " [e]xcept in the case of an alien subject to ... expedited removal ..., an alien arrested without warrant and placed in formal proceedings ... will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government" (emphasis added)). Because non-admitted aliens are entitled only to whatever process Congress provides, *see Shaughnessy*, 338 U.S. at 544, 70 S.Ct. 309,

---

[4]This document is in the record signed by Defendant, dated September 20, 2011, and in the Spanish language.

> Barajas–Alvarado's lack of representation in the removal proceeding did not constitute a procedural error at all, let alone a due process violation.

*Id.* at 1088. In this case, the Court concludes that Defendant's due process rights were not violated in the expedited removal proceedings because Defendant was not informed of a right to consult with counsel..

Defendant further contends that immigration officials violated agency regulations, and consequently his due process rights, when they failed to inform him of the charges against him, and failed to read him the Form I-867A (Sworn Statement) and the Form I-867B (Jurat of Sworn Statement). The Government contends that there was no procedural error in his 2012 expedited removal proceedings because Defendant refused to review the written record of his sworn statement when requested to do so by the immigration agent. The Government further contends that any failure to read the expedited removal charges or to review the sworn statement had no effect on the factual accuracy of the charges that served as the basis for the expedited removal order. Even assuming a procedural error, the Government contends that Defendant cannot establish prejudice. The Government contends that immigration officials had no due process duty to inform the Defendant of a right to relief by "withdrawal of application for admission" and that Defendant had no plausible grounds to receive relief from removal by withdrawal of his application for admission in any event.

In this case, the documents in the record from the expedited removal show that Defendant was interviewed by Immigration Enforcement Agent Pareida pursuant to the Criminal Alien Program while Defendant was incarcerated at a federal correctional facility in Post, Texas. Defendant was serving his sentence imposed in the Southern District of California for Illegal Entry in violation of 8 U.S.C. § 1325 and his sentence imposed in the Eastern District of Washington for violation of supervised release imposed after his conviction for a violation of 8 U.S.C. § 1326. After interviewing the Defendant Agent Pareida prepared a Form I-860 charging that Defendant was subject to removal in that:

> You are not a citizen or national of the United States;
> You are a native of MEXICO and a citizen of MEXICO;
> You entered the United States on or about September 20, 2011, near Tecate, California without inspection by an immigration officer;
> You were, on September 20, 2011, apprehended by CBP-Boulevard, California approximately 25 miles east of Tecate, California Port of Entry;
> You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act;
> You were, on February 07, 2012, convicted in the United States District Court, Southern District of California, for the offense of Illegal Entry, in violation of Title 8 USC Section 1325;
> For that offense you were sentenced to 6 months in the custody of the Bureau of Prisons;
> ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW: 212(a)(7)(i)(I) of the Immigration and Nationality Act.

(ECF No. 31-4 at 5-6).

On November 30, 2012, Defendant was interviewed by Department of Homeland Security Agent Lorenzo Lazcano admitting all of the facts noted above. (ECF No. 31-4 at 8). The interview Form I-867A is signed and dated by Agent Lazcano and in the space above Defendant's printed name indicates "REFUSED TO SIGN." *Id.* at 9. Agent Pareida completed the expedited removal documents. After Agent Pareida received the Form I-860 Order of Removal, Agent Pareida personally served the Order of Removal on the Defendant. (ECF No. 31-4 at 5).

On December 26, 2012, Defendant received Information about Credible Fear Interview and acknowledged receipt of the notice. (ECF No. 31-4 at 11-12).

On February 25, 2013, a Credible Fear Determination interview was held and testimony taken from Defendant. The Immigration Court found that Defendant had not established a significant possibility of persecution and affirmed the order of removal. (ECF No. 31-4 at 14).

On March 26, 2012, Defendant was removed to Mexico afoot at Del Rio, Texas. (ECF No. 31-4 at 15).

In this case, the expedited removal documents establish that all steps in the expedited removal proceedings were completed and the record in this case establishes

that all of the information in the expedited removal documents was accurate. Defendant does not claim that any removal allegation or information in the sworn statement was not accurate. Defendant's refusal to sign the I-867A when requested does not constitute a due process violation. Even assuming that Defendant can create a procedural error in the expedited removal proceedings by refusing to sign the I-867A after his interview by immigration officials or assuming that Defendant refused to sign the Form I-867A because the form was not read to him, Defendant must show that he suffered prejudice as a result of the alleged defect. *See United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010).

## PREJUDICE

Defendant contends that he was statutorily eligible for relief from removal and no showing of plausibility of being granted relief is required. If a showing of plausibility is required, Defendant contends that the equities in his case show plausible grounds for a positive exercise of discretion. The Government contends that a showing that some form of relief from removal was plausible is required to show prejudice supporting a violation of due process. The Government contends that Defendant cannot and has not shown that withdraw of his application for admission was plausible discretionary relief.

"[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." *Barajas-Alvarado*, 655 F.3d at 1084. Neither the expedited removal statute, nor the regulations, require that an immigration officer advise the alien of his opportunity to request withdrawal of his application for admission, subject to the Attorney General's discretion. 8 U.S.C. § 1225(b)(1)(A)(I); 8 C.F.R. § 235.3 (procedures for expedited removal). Defendant was not denied due process by the immigration officer's failure to inform him that he had the right to withdraw the application for admission "in the discretion of the Attorney General." 8 U.S.C. § 1225(a)(4)

In this case, Defendant suffered no prejudice because he had no plausible grounds for relief in the form of withdrawal of his application for admission. "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). In *Barajas-Alvarado*, 655 F.3d at 1090, the Court of Appeals explained:

> Although an arriving alien may ask to withdraw an application for admission, the grant of such relief is discretionary. *See* 8 C.F.R. § 1235.4. Prior to IIRIRA, both IJs and immigration officers had the authority to permit an alien to withdraw an application for admission under certain circumstances, an exercise of discretion recognized in the case law, *see In re Gutierrez*, 19 I. & N. Dec. 562 (B.I.A.1988), but not codified. In *Gutierrez*, the BIA instructed IJs on how this discretion should be exercised, and indicated (among other things) that an alien's attempted fraudulent entry would ordinarily make the alien ineligible for withdrawal relief. *See id.* at 565 ("[E]ven if we were to disregard the applicant's attempted fraudulent entry, we can discern no facts or circumstances relevant to the issue of his admissibility which suggest that justice demands that he be allowed to withdraw his application for admission."). When Congress enacted IIRIRA, it codified this form of discretionary relief in § 1225(a)(4). (footnote omitted). The agency subsequently developed regulations authorizing immigration officers to permit arriving aliens to withdraw their applications for admission "in lieu of removal proceedings" or expedited removal. *See* 8 C.F.R. § 1235.4.
>
> While the statute and regulation set forth scant guidance for the immigration officer to determine whether to grant withdrawal relief, the agency has prepared an internal document, an Inspector's Field Manual, to guide the immigration inspector's exercise of discretion. The Field Manual sets forth six factors that the immigration officer should consider in evaluating an alien's request for permission to withdraw, namely: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. Like *Gutierrez*, it concludes that "[a]n expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a) (2001), available at Westlaw FIM–INSFMAN 17.2.

655 F.3d at 1090-1091. (footnotes omitted).

In this case, Defendant entered the United States illegally in September 2011 after prior removals on February 3, 1999; December 23, 1999; June 30, 2000; September 13, 2002; and August 20, 2011. Prior to his 2012 expedited removal,

1  Defendant had sustained three federal immigration convictions. Defendant was serving
2  a custodial term for his most recent immigration convictions at the time of his 2012
3  expedited removal. Defendant's serious criminal immigration convictions and repeated
4  prior findings of inadmissibility would weigh strongly against discretionary relief by
5  withdrawal of his application for admission.

6  Defendant entered the United States on September 20, 2011 illegally one month
7  after he was removed to Mexico on August 20, 2011 after serving his sentence for his
8  second federal immigration conviction.  Defendant's clear intent to violate the law
9  resulted in his prosecution in the Southern District of California and violation of his
10 supervised release terms in the Eastern District of Washington.  Defendant's intent to
11 repeatedly violate the immigration laws would weigh strongly against discretionary
12 relief by withdrawal of his application for admission.

13 Defendant was born in Mexico, his parents are citizens of Mexico and he has
14 never possessed documents entitling his to legally enter or reside in the United States.
15 In light of Defendant's established inadmissibility to the United States, Defendant's
16 three prior federal immigration convictions, and Defendant's multiple state
17 misdemeanor convictions, the Court concludes that there are no mitigating factors or
18 other humanitarian or public interest considerations that could have resulted in the grant
19 of discretionary relief from the expedited removal proceedings.  At the time of his
20 expedited removal, Defendant was 42 years with no allegations of poor health.
21 Defendant's assertion that he "had a 20 year history in the United States with a majority
22 of his family in the United States including his own child" (ECF No. 26 at 25) are not
23 factors listed in the Inspector's Field Manual as considerations and carry little weight
24 in the discretionary decision to grant withdrawal of his application for admission.
25 *Barajas-Alvarado*, 655 F.3d at 1091.

26 Under the facts of this case, the Court concludes that it is implausible that
27 Defendant would have been allowed to withdraw his application for admission had he
28

requested to do so and that Defendant suffered no prejudice when immigration officials did not inform him that he had a right to relief by withdrawal of his application for admission.

## **DISCOVERY AND EVIDENTIARY HEARING**

Defendant moves the Court to "order the U.S. Attorney's office to produce information with regards to what aliens are permitted to withdraw their applications, and which are not." (ECF No. 16-1 at 8). Defendant requests a discovery order to produce information material to the Court's decision about whether he would have been plausibly permitted to withdraw his application for admission. Defendant further requests an evidentiary hearing to "hear testimony from the Port Director or other competent Customs and Border Protection officials about how and why they exercise their discretion to permit the vast majority of aliens to withdraw their applications for admission." (ECF No. 26-1 at 26). The Government contends these discovery requests exceed the bounds of Rule 16 discovery, and that the requested discovery is overbroad and burdensome with no logical nexus to the facts of this case.

The Court concludes that the discovery requested is vague, overbroad, and not aimed at information discoverable under Rule 16 of the Federal Rules of Criminal Procedure. The discretionary decision to allow the withdrawal of application for admission is a fact-intensive inquiry that focuses on the individual circumstances of a particular defendant. *See Barajas-Alvarado*, 655 F.3d at 1089. The vague request for "information with regards to what aliens are permitted to withdraw their applications, and which are not" is not discoverable under any provision of Fed. R. Crim. P. 16.

## CONCLUSION

IT IS HEREBY ORDERED that: 1) the motion to dismiss the indictment and to hold an evidentiary hearing (ECF No. 26) is denied and 2) the motion to produce discovery (ECF No. 16-4) is denied.

DATED: October 23, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge